MORGAN, LEWIS & BOCKIUS LLP
Brian D. Berry, Bar No. 229893
Sarah Zenewicz, Bar No. 258068
One Market
Spear Street Tower
San Francisco, CA 94105-1596
Tel:   +1.415.442.1000
Fax:   +1.415.442.1001
brian.berry@morganlewis.com
sarah.zenewicz@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Anahi Cruz, Bar No. 324326
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501
anahi.cruz@morganlewis.com

Attorneys for Defendants
AMAZON.COM INC., AMAZON.COM SERVICES LLC, AND AMAZON WEB SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE OBRIEN, as an individual and on behalf of others similarly situated,,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM INC., a Delaware corporation; AMAZON.COM SERVICES LLC, a Delaware limited liability corporation; AMAZON WEB SERVICES, INC., a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 3:22-cv-348<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION**<br><br>(Alameda County Superior Court Case No. 21CV004153)<br><br>Action Filed: Dec. 15, 2021 |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1332, 1441, 1453, 1711, and the Class Action Fairness Act of 2005 ("CAFA"), Defendants Amazon.com Inc., Amazon.com Services LLC, and Amazon Web Services, Inc. (collectively "Amazon" or "Defendants"), hereby remove to the United States District Court for the Northern District of California the above-captioned state court action, originally filed as Case No. 21CV004153 in Alameda County Superior Court, State of California.

## I.   INTRODUCTION

1.   Removal to this Court is proper under 28 U.S.C. §§ 1441, 1446, and 1453 because (i) the aggregate number of putative class members is 100 or greater, (ii) diversity of citizenship exists between one or more Plaintiffs and one or more Defendants, and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million,[1] exclusive of interests and costs. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453.

2.   Removal to this Court is also proper under 28 U.S.C. §1332 because (i) Plaintiff's individual claims place more than $75,000 in controversy, exclusive of interests and costs, (ii) the action involves citizens of different states, and (iii) no properly joined defendant is a citizen of California.

## II.   PROCEDURAL BACKGROUND

3.   On December 15, 2021, Plaintiff Michele Obrien ("Plaintiff") filed an unverified putative class action complaint in the Superior Court of the State of California, County of Alameda, entitled *Michele Obrien, an individual and on behalf others similarly situated, vs. Amazon.com Inc., a Delaware corporation; Amazon.com Services LLC, a Delaware limited*

---

[1] This Notice of Removal relies on the nature and amount of damages that Plaintiff's Complaint places in controversy. Defendants refer to specific damage amounts and cite comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. But Defendants maintain that Plaintiff's claims lack merit and that Defendants are not liable to Plaintiff or any member of the putative class for any amount whatsoever. Indeed, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

*liability corporation; Amazon Web Services, Inc., a Delaware Corporation, and Does 1 through 100, inclusive*, Case No. 21CV004153.

4.     On December 17, 2021, Plaintiff served Defendants personally with the Summons, Complaint, Civil Case Cover Sheet, Alternative Dispute Resolution (ADR) Information Package, and ADR Stipulation on Amazon. Copies of these documents, as well as the Proofs of Service, are attached as Exhibits A-G to the Declaration of Brian D. Berry ("Berry Decl.") in support of Defendants' Notice of Removal.

5.     In her Complaint, Plaintiff asserts causes of action on behalf of herself and members of the following putative class:

> "all current and former employees of Amazon, aged 40 or older, who worked at Amazon warehouses or fulfillment centers in California and who have been or continue to be subjected to, or had to meet, any policy or practice of Amazon regarding 'rate of production' for their work and/or work production quotas during the period from December 15, 2017 to the present[.]"

Berry Decl. Ex. A, Compl. at ¶ 34.

6.     The Complaint alleges three causes of action: (1) Age Discrimination in violation of the Fair Employment and Housing Act ("FEHA") (Cal. Gov't Code §§ 12940, *et seq*.); (2) Failure to Prevent or Correct Discrimination under FEHA (Cal. Gov't Code § 12940(k)); and (3) Unfair Business Practices (violation of Cal. Bus. & Prof. Code §§17200, *et seq*.).

7.     For purposes of this removal only, Amazon assumes the truth of Plaintiff's allegations.

**III.    REMOVAL IS TIMELY**

8.     On December 17, 2021, Plaintiff served the Complaint through Amazon's registered agent for service of process. *See* Berry Decl. ¶¶ 2, Exs. E-G. This Notice of Removal is timely because Amazon filed it within thirty days of service of the Summons and Complaint. 28 U.S.C. §§ 1446(b), 1453; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) ("[I]f the summons and complaint are served together, the 30-day period for removal runs at once.").

### IV. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA.

9. The Complaint purports to state claims on behalf of Plaintiff and members of a putative class. Compl. ¶ 2. Thus, removal based on CAFA diversity jurisdiction is proper under 28 U.S.C. § 1441(a) if: (i) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs, (ii) diversity of citizenship exists between one or more plaintiffs and one or more defendants, and (ii) the aggregate number of putative class members is 100 or greater. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453. As explained below, Plaintiff's Complaint satisfies these CAFA standards.[2]

#### A. The Proposed Class Consists of More Than 100 Members.

10. Plaintiff asserts claims on behalf of herself and "all current and former employees of Amazon, aged 40 or older, who worked at Amazon warehouses or fulfillment centers in California and who have been or continue to be subjected to, or had to meet, any policy or practice of Amazon regarding 'rate of production' for their work and/or work production quotas, during the period from December 15, 2017 to the present." Compl. ¶ 34.

11. Plaintiff alleges that "[t]he members of the class exceed 1,000 persons[.]" Compl. ¶ 36; *see also* Declaration of Nicole Bruno ("Bruno Decl.") ¶ 3.

12. Thus, the aggregate number of class members exceeds the jurisdictional threshold of 100 people. *See* 28 U.S.C. § 1332(d)(5)(B).[3]

#### B. Amazon and Plaintiff Are Not Citizens of the Same State.

13. To satisfy CAFA's diversity requirement, a party seeking removal must plead that one putative class member is a citizen of a different state than one defendant (i.e., so-called

---

[2] Amazon does not concede, and reserves the right to contest, Plaintiff's allegations that this action may proceed as a class action. In addition, Amazon does not concede and reserves the right to contest that any of Plaintiff's allegations constitute a cause of action against it under applicable California law.

[3] Amazon reserves the right to supplement or provide the Court with additional briefing or information necessary to appropriately assess CAFA's jurisdictional requirements or traditional diversity requirements with respect to the named Plaintiff. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) (noting that a party may "cure[] its defective allegations…by amending its notice of removal.").

minimum diversity). 20 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

14. "An individual is a citizen of the state in which he is domiciled . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal 2002) (citing *Kanter*, 265 F.3d at 857). For purposes of diversity, citizenship is determined by the individual's domicile when the lawsuit is filed. *Lew v. Moss*, 797 F. 2d 747, 750 (9th Cir. 1986). Evidence of continuing residence creates a presumption of domicile. *Washington v. Havensa LLC*, 654 F.3d 340, 345 (3rd Cir. 2011).

15. Plaintiff admits that she "resides in Highland, California." Compl. ¶ 7. The Complaint does not allege any alternate state citizenship. *See generally* Compl. Amazon's records show that Plaintiff's last known home address is in California. Bruno Decl. ¶ 4. Therefore, Plaintiff is a citizen of California for purposes of diversity jurisdiction.

16. Moreover, the Complaint pleads claims on behalf of a putative class of individuals who worked for Amazon in California. Compl. ¶ 2. Thus, at least one putative class member is a citizen of California.

17. Pursuant to 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's "principal place of business" is where its "officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meeting[.]" *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

18. Defendant Amazon.com, Inc. is a corporation organized under the laws of the State of Delaware. Declaration of Zane Brown ("Brown Decl.") ¶ 4. Its principal place of

business and corporate headquarters is in Seattle, Washington, where its officers direct, control, and coordinate corporate activities. *Id.* Similarly, Defendant Web Services, Inc. is a corporation organized under the laws of the State of Delaware. *Id.* ¶ 5. Its principal place of business and corporate headquarters is in Seattle, Washington, where its officers direct, control, and coordinate corporate activities. *Id.* Thus, Defendants Amazon.com, Inc. and Amazon Web Services, Inc are citizens of Delaware and Washington. 28 U.S.C. § 1332(c)(1).

19. Under CAFA, a limited liability company is deemed to be a citizen of the state under whose laws it is organized and a citizen of the state where it has its principal place of business. 28 U.S.C. § 1332(d)(10). Defendant Amazon.com Services, LLC is a limited liability company organized under the laws of Delaware. Brown Decl. ¶ 3. Its headquarters are in Seattle, Washington, where its officers direct, coordinate and control its business operations. *Id.* Thus, Defendant Amazon.com Services, LLC is a citizen of Delaware and Washington. 28 U.S.C. § 1332(d)(10).

20. For purposes of diversity jurisdiction under 18 U.S.C. § 1332, courts disregard the citizenship of defendants sued under fictitious names. 28 U.S.C. § 1441(b)(1). The citizenship of "Does 1-100" named in the Complaint is therefore immaterial to the jurisdiction inquiry.

21. Thus, the Complaint satisfies CAFA's minimal diversity requirement because Plaintiff and some other class members are citizens of California and Defendants are citizens of Delaware and Washington. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

**C.     The Amount In Controversy Exceeds $5 Million.**

22. CAFA jurisdiction requires the aggregate value of the putative class members' claims to exceed $5 million (exclusive of interest and costs). 28 U.S.C. § 1332(d)(6).

23. Where, as here, a complaint does not plead a specific amount of damages, the petition for removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," consistent with the pleading standard under Rule 8(a). *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); Fed. R. Civ. P. 8(a). "If a federal court is uncertain about whether 'all matters in controversy' in a purported class

action 'do not in the aggregate exceed the sum or value of $5,000,000' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109-14, at 42 (2005) (citation omitted).

24. CAFA does not require a defendant "to comb through its records to identify and calculate the exact frequency of violations." *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *7 (N.D. Cal. Dec. 30, 2019) (quoting *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015)). Nor does CAFA require a removing defendant to "research, state, [or attempt to] prove the plaintiff's claim for damages." *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1217 (N.D. Cal. 2019) (citation and quotation marks omitted); *see also LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's conflation of "the amount in controversy with the amount of damages ultimately recoverable."). When assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 658 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

25. As explained below, the amount in controversy here easily exceeds $5 million.

**1.    Plaintiff's Request for Back Pay Places More Than $5 Million In Controversy.**

26. There are well in excess of 20,000 members of the putative class. Bruno Decl. ¶ 3.

27. The average minimum wage in California during the relevant time period was more than $12.00, and Amazon paid all members of the putative class at least minimum wage. *See id.* Thus, a conservative estimate of the weekly pay for the full-time employees who are members of the putative class is $480.00 ($12 x 40 hours).

28. "[U]nder FEHA, back pay is awarded from the time of the adverse employment action until the date of judgment and includes past lost wages and lost benefits." *Melendez v. HMS Host Family Rests., Inc.*, 2011 WL 3760058, at *2 (C.D. Cal. Aug. 25, 2011); *see also Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002) (using nearly 10-month

period between termination and date of removal to calculate potential lost back wages for purposes of determining amount in controversy); *Fisher v. HNTB Corp.*, 2018 WL 6323077, at *4 (C.D. Cal. Dec. 3, 2018) (using 34-week period between termination and removal to calculate value of lost wages for purposes of amount in controversy).

29. Based on the conservative assumption of one week of back pay at the average minimum weekly pay of $480.00, the Complaint's claim for back pay alone places over **$9,600,000** in controversy (20,000 class members x $480.00).[4]

### 2. Plaintiff's Request for Emotional Distress Damages Places Additional Amounts in Controversy.

30. A plaintiff may recover emotional distress damages in a discrimination action under FEHA. *See Mangold v. California Pub. Utils. Comm'n,* 67 F.3d 1470, 1478 (9th Cir. 1995) ("emotional distress is allowable for the statutory FEHA claim"); *Hernandez v. Wells Fargo Bank, N.A.*, 2020 WL 6020593, at *2 (N.D. Cal. Oct. 12, 2020) (granting final approval of settlement wherein a "fixed amount of one million dollars will then be placed into the 'severe emotional distress fund'" to release the claims of nearly 500 class members); *Wellens v. Daiichi Sankyo, Inc.,* 2015 WL 10090564, at *8 (N.D. Cal. Oct. 16, 2015) (granting preliminary approval of settlement establishing $926,200 fund to compensate class members for "harassment, retaliation, or emotional distress damages"); *Barefield v. Chevron U.S., Inc.,* 1997 WL 9888, at *1, *31, n.64 (N.D. Cal. Jan. 2, 1997) (noting that "the Consent Decree [previously approved by the Court to settle class action claims for employment discrimination, among others] created a compensatory damages fund (to contain between $710,000 and $750,000)" to "settle[ ]… claims for emotional distress").

31. Plaintiff alleges that she and members of the putative class "have suffered injury, including but not limited to emotional distress, entitling them to compensatory damages[.]" Compl. ¶¶ 51, 57. While Plaintiff's emotional distress allegations are vague, "[t]he vagueness of plaintiffs' pleadings with regard to emotional distress damages should not preclude [the] Court

---

[4] The calculation excludes the value of any employment benefits that the Complaint seeks on behalf of the class, which, if included, would substantially increase the amount in controversy.

from noting that these damages are potentially substantial." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995).

32. Individual emotional distress damage awards in comparable cases regularly exceed $10,000. *See, e.g.*, *Wondeh v. Change Healthcare Prac. Mgmt. Sols., Inc.*, 2020 WL 5630268, at *2 (N.D. Cal. Sept. 21, 2020) (denying motion to remand and recognizing "similar employment cases in which the jury awarded between $54,000 and $116,333 in emotional distress damages."); *Jackson v. CEVA Logistics*, 2020 WL 1967208, at *9 (N.D. Cal. Apr. 24, 2020) (denying motion to remand and recognizing prior jury awards of emotional distress damages in FEHA cases ranging from $100,000 to $1,300,000); *Martinez v. Rite Aid Corp.*, 63 Cal. App. 5th 958, 968 (2021) (affirming jury verdict awarding "$374,000 in past noneconomic loss, and $600,000 in future noneconomic loss" on wrongful termination claim and "$4 million in past noneconomic damages on [plaintiff's] intentional infliction of emotional distress claim"); *Green v. Laibco, LLC*, 192 Cal. App. 4th 441, 446 (2011) (affirming jury verdict in wrongful termination and FEHA case awarding "750,000 for past noneconomic loss, including emotional distress").

33. Conservatively assuming only $250 in emotional distress damages per class member places another **$5,000,000** in controversy (i.e., 20,000 class members x $250).

### 3. Plaintiff's Request for Attorneys' Fees Places Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.

34. Plaintiff also seeks recovery of attorneys' fees. *See, e.g.,* Compl. ¶¶ 3, 52, 58, 64-65; Prayer for Relief ¶¶ 4, 8, 9.

35. For purposes of CAFA jurisdiction, the amount in controversy includes attorneys' fees. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (affirming inclusion of attorneys' fees in amount in controversy); *see also Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *5-6 (C.D. Cal. Mar. 3, 2015) ("The Court believes that, when authorized by an underlying statute, the better view is to consider post-removal attorneys' fees because they are part of the total 'amount at stake.'" (citation omitted)); *Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (finding reasonable estimate of future attorneys' fees can be used in calculating the amount in controversy).

36. The Ninth Circuit benchmarks recoverable attorneys' fees at 25 percent of the potential damages award. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund). Using that 25 percent benchmark equates to $3,650,000 in fees (25% of $14,600,000). But for purposes of this removal, Defendants will assume an even more conservative estimate of $1,000,000 in attorneys' fees. Notably, Plaintiff's counsel, Peter M. Hart, has filed fee motions in class actions that report his hourly rate at $675. Request for Judicial Notice, Ex. A. Using the rate of $675 per hour, it would take 1,482 billable hours for Plaintiff's attorneys to reach **at least $1,000,000** in attorneys' fees in this action. Although that is a substantial amount of time, litigating a large employment class action through trial would likely require at least this number of hours, and perhaps many multiples more. *See, e.g., Ridgeway v. Wal-Mart Stores Inc.,* 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (granting a total of $15,200,002.90 in attorneys' fees based on a total of 10,595.8 hours at rates ranging from $300 to $900 per hours following a 16-day class action trial); *Ibarra v. Wells Fargo Bank, N.A.,* 2018 WL 5276295, at *7 (C.D. Cal. Sept. 28, 2018) (awarded $1,967,253.76 in attorneys' fees to the plaintiffs following summary judgment in their favor where class counsel had spent 1,805.55 hours litigating at rates ranging from $325 to $775); *In re Taco Bell Wage and Hour Actions,* 222 F. Supp. 3d 813, 847 (E.D. Cal. 2016) (awarding $1,156,821.12 in fees following trial based on 4,016.74 hours billed and a blended rate of only $288 per hour).

**4.     Summary of the Amount Placed in Controversy Under CAFA.**

37. As described above, a reasonable and conservative estimate of the amount placed in controversy by Plaintiff's claims for back wages, emotional distress, and attorneys' fees exceeds $5,000,000.

| Claim | Amount in Controversy |
|---|---:|
| Back Wages | $9,600,00.00 |
| Emotional Distress | $5,000,000.00 |
| Attorneys' Fees | $1,000,000.00 |
| **Total** | **$15,600,000.00** |

38. Consequently, the amount placed in controversy by Plaintiff's claims easily exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## V. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE RULE FOR TRADITIONAL DIVERSITY JURISDICTION

39. The Complaint also satisfies traditional diversity jurisdiction because "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." *See* 28 U.S.C. §§ 1332(a)-(a)(1).

### A. Complete Diversity of Citizenship Exists Between the Parties.

40. Plaintiff is domiciled in California, as she is a resident of California with an intent to remain in the State. Section IV.B., *supra*.

41. Defendants Amazon.com, Inc. and Amazon Web Services, Inc. are citizens of Delaware and Washington. *Id.*

42. For the purposes of determining the citizenship of a limited liability company for traditional diversity, Ninth Circuit looks to the citizenship of each of the LLC's members. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)

43. Defendant Amazon.com Services, LLC is a limited liability company organized under the laws of the State of Delaware. Brown Decl. ¶ 3. Its principal place of business is in Seattle, Washington. *Id.* Amazon.com, Sales Inc. is the sole member and only owner of Defendant Amazon.com Services, LLC. *Id.* Amazon.com Sales, Inc. is wholly owned by Amazon.com, Inc. *Id.* Amazon.com Sales, Inc. is a corporation organized under the laws of the State of Delaware. Its principal place of business and corporate headquarters is in Seattle, Washington, where its officers direct, control, and coordinate corporate activities. Thus,

Defendant Amazon.com Services, LLC is a citizen of Delaware and Washington. *See* 28 U.S.C. § 1332(c)(1); *Johnson*, 437 F.3d at 899.

44. Pursuant to 28 U.S.C. § 1441(b)(1), the citizenship of defendants sued under fictitious names does not affect the diversity analysis. Thus, the inclusion of "Doe" defendants in the Complaint has no effect on removability. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998); 28 U.S.C. § 1441(a) (stating that for purposes of removal, the citizenship of Defendant sued under fictitious names shall be disregarded).

45. Thus, complete diversity exists between the parties because Plaintiff is a citizen of California and Defendants are citizens of Washington and Delaware. 28 U.S.C. §§ 1332(a)-(a)(1).

### B. The $75,000 Amount in Controversy Requirement is Satisfied.

46. All recoverable damages, including penalties and attorneys' fees, count toward the amount in controversy. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347-48 (1977) (superseded by statute on other grounds); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Galt G/S/ v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

47. Plaintiff alleges in her Complaint that Amazon discriminated against her based on her age. Compl. ¶¶ 20-32. Plaintiff seeks to recover several categories of damages, including front pay, back pay, the value of lost employment benefits, and emotional distress, as well as attorneys' fees. *Id.* at Prayer for Relief ¶¶ 5, 7, 9.

#### 1. Plaintiff's Request for Lost Wages Places At Least $50,000 In Controversy.

48. Plaintiff alleges Amazon terminated her in October 2018, re-hired her in 2019, and terminated her again in 2019. Compl. ¶¶ 26 28, 32. Plaintiff was terminated most recently on December 6, 2019. Bruno Decl. ¶ 5. Plaintiff was a part-time employee and worked between 20 and 29 hours per week during her employment with Amazon. *Id.*

49. At the time of her 2018 termination, Plaintiff was earning at least minimum wage, i.e. $11.00 per hour. *See* Bruno Decl. ¶ 3. Thus, Plaintiff's weekly pay was at least $220 (i.e., $11 x 20 hours). At least 9 weeks passed between Plaintiff's October 2018 termination and her rehire

- 12 -
DEFENDANTS' NOTICE OF REMOVAL

1  in 2019. Thus, Plaintiff's Complaint places $1,980 in controversy for back wages stemming from her 2018 termination.

50. At all times in 2019, Plaintiff's rate of pay was $15 per hour. Bruno Decl. ¶ 5. Thus, Plaintiff's weekly pay was at least $300 (i.e., $15 x 20 hours). Approximately 109 weeks passed between Plaintiff's December 2019 termination and the date of this removal. As a result, Plaintiff's Complaint places an additional $32,700 in controversy for back wages (i.e., 112 weeks x $300 minimum weekly hourly wages).

51. Plaintiff also seeks front pay. "Because Plaintiff 'claims at the time of removal that her termination caused her to lose future wages, . . . then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them.'" *Molina v. Target Corp.*, 2018 WL 3935347, at *3 (C.D. Cal. Aug. 14, 2018) (quoting *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 417 (9th Cir. 2018)). "[C]ourts have often found that one year from the date of removal is a 'conservative estimate of the trial date' in employment cases." *Reyes v. Staples Off. Superstore, LLC*, 2019 WL 4187847, at *3 (C.D. Cal. Sept. 3, 2019) (citing *Fisher v. HNTB Corp.*, 2018 WL 6323077, at *5 (C.D. Cal. Dec. 3, 2018)). Assuming this case goes to trial within a year from removal, Plaintiff's claim for front pay places an additional $15,600 in controversy (i.e., 52 weeks x $300 minimum weekly hourly wages).

52. Thus, Plaintiff's claim for lost wages places **$50,280** in controversy, exclusive of any amounts for lost benefits.

### 2. Plaintiff's Request for Emotional Distress Damages Places More Than $75,000 In Controversy.

53. In employment discrimination actions, juries in California and elsewhere have returned verdicts with substantial awards for non-compensatory damages that far exceed $75,000. *See EEOC v. Harris Farms, Inc.*, Docket No. 02-CV-06199-AW1-LJ0 (E.D. Cal. Jan. 24, 2005) (jury verdict included damages for $53,000 in past earnings, $91,000 in futures earnings, and $350,000 in emotional distress damages); *Astor v. Rent-A-Center*, Docket No: 03AS048644 (Sacramento Cty. Superior Court Aug. 5, 2005) (jury verdict included $369,000 in economic damages and $250,000 in noneconomic damages); *Pansacola v. Malaysia Airlines*, Docket No.:

CV045944 (C.D. Cal. Feb 6, 2006) (jury verdict of $237,537, of which $160,000 was for punitive damages). Prevailing plaintiffs in employment lawsuits regularly receive more than $75,000 for emotional distress damages alone. *See, e.g., Keifer v. Bechtel Corp.*, 65 Cal. App. 4th 893, 895 (1998) (upholding jury award in excess of $75,000.00 for emotional distress damages in age discrimination and wrongful termination case); *Ward v. Cadbury Schweppes Bottling Grp.*, 2011 WL 7447633 (C.D. Cal. Dec. 11, 2011) (awarding a total of $7,550,000 in compensatory damages for emotional distress and physical injuries to six plaintiffs in age discrimination and wrongful termination case); *Welch v. Ivy Hill Corp.*, No. BC414667, 2011 WL 3293268 (Los Angeles Sup. Ct. Mar. 8, 2011) (awarding $1,270,000 in pain and suffering to employee in age discrimination action).

54.     "Emotional distress awards in California for wrongful termination in violation of public policy and discrimination under [FEHA]… can be large relative to the underlying economic damages." *Simpson v. Off. Depot, Inc.*, 2010 WL 11597950, at *3 (C.D. Cal. June 21, 2010). For instance, in *Campbell v. Nat'l Passenger R.R. Corp.*, 2010 WL 625362, at *1 (N.D. Cal. Feb. 18, 2010), the Court awarded $120,000 in non-economic damages in a wrongful termination and discrimination case. *See also Piutau v. Fed. Express Corp.*, 2003 WL 1936125 (N.D. Cal. Apr. 32, 2003) (awarding non-economic damages of $35,000, or 201% of the $17,381.55 in economic damages awarded for wrongful suspension); *Francies v. Kapla*, 127 Cal. App. 4th 1381 (2005) (finding that wrongfully terminated plaintiff suffered $425,000 in non-economic damages, 607% of his $70,000 in economic damages).  Here, approximating her noneconomic damages at 200% of her economic damages places **$102,000** in emotional distress damages in controversy (i.e., 200% of $51,000).

55.     Thus, based on a conservative good faith estimate of the value of the alleged emotional distress damages in this action, the amount in controversy for Plaintiff's emotional distress claim itself exceeds $75,000, exclusive of interest and costs. *See, e.g., Silverman v. Stuart F. Cooper Inc.,* No. BC467464, 2013 WL 5820140 (Los Angeles Sup. Ct. July 19, 2013) (awarding $151,333 for emotional distress damages in age discrimination and wrongful termination case); *Aboulafia v. GACN Inc.,* No BC469940, 2013 WL 8115991 (Los Angeles Sup.

Ct. Dec. 17, 2013) (pain and suffering awards of at least $250,000 to each of four employees in age discrimination and wrongful termination action).

56. Thus, based on a conservative estimate, Plaintiff's claim for emotional distress places at least $75,000 in controversy.

### 3. Plaintiff's Request for Attorneys' Fees Places More than $75,000 In Controversy.

57. Plaintiff seeks to recover an unspecified amount of attorneys' fees. Compl. ¶¶ 3, 52, 58, 65; Prayer for Relief ¶ 9. Attorneys' fees count toward the amount in controversy. *See, e.g., Guglielmino*, 506 F.3d at 697-98 (attorneys' fees are included in the calculation of the amount in controversy under 28 U.S.C. § 1332(a)).

58. Here, Plaintiff brings claims under FEHA, which allows a "prevailing party" to recover reasonable attorneys' fees. Cal. Gov. Code § 12965; *see also Flannery v. Prentice*, 26 Cal. 4th 572, 577 (2001) (confirming that prevailing plaintiffs under FEHA can recover attorneys' fees and costs).

59. As explained in Section IV.C.3., *supra*, Plaintiff's counsel's hourly rate as submitted in other recent cases is $675. In recent employment cases, courts in this district have treated 300 to 1,700 billable hours as reasonable. *See, e.g., Khraibut v. Chahal*, 2021 WL 1164940, at *24 (N.D. Cal. Mar. 26, 2021) (concluding 1049.31 hours "spent up until the motion for default judgment was filed … [we]re reasonable" in employment case alleging FEHA claims); *Polee v. Cent. Contra Costa Transit Auth.*, 2021 WL 308608 (N.D. Cal. Jan. 29, 2021) (granting attorney fees for "337.8 hours claimed at an hourly rate of $850" in case including FEHA claims); *Newton v. Equilon Enters., LLC*, 411 F. Supp. 3d 856, 879 (N.D. Cal. 2019) (finding "the hours requested to be fair and reasonable" where plaintiff sought to recover "1797.25 hours of billable attorney and paralegal time" in FEHA case).

60. Conservatively assuming only 300 attorney hours through trial places an additional **$202,500** in controversy (i.e., 300 hours x $675/hour).

#### 4. Summary of the Amount Placed in Controversy.

61. As described above, a reasonable and conservative estimate of the amount placed in controversy by Plaintiff's individual claims for lost wages, emotional distress, and attorneys' fees exceeds $75,000.

| Claim | Amount in Controversy |
|---|---:|
| Back Wages | $50,280.00 |
| Emotional Distress | $102,000.00 |
| Attorneys' Fees | $202,500.00 |
| **Total** | **$354,780.00** |

62. Consequently, the amount placed in controversy by Plaintiff's individual claims easily satisfies the jurisdictional threshold under 28 U.S.C. § 1332(a).

## VI. VENUE

63. This action was originally filed in the Superior Court for the County of Alameda. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. §1441(a), because it encompasses the county in which this action has been pending.

## VII. NOTICE

64. Amazon will promptly serve this Notice of Removal on Plaintiff and will promptly file and serve a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, County of Alameda, in which the action is pending, as required under to 28 U.S.C. § 1446(d).

65. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders served" upon Amazon as well as other documents filed in the state court action are filed concurrently with this Notice of Removal as exhibits to the Berry Declaration.

## VIII. CONCLUSION

66. Based on the foregoing, Amazon requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Amazon requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

| | |
|---|---|
| Dated: January 18, 2022 | MORGAN, LEWIS & BOCKIUS LLP |
| | By  */s/ Brian D. Berry* |
| | Brian D. Berry |
| | Sarah Zenewicz |
| | Anahi Cruz |
| | Attorneys for Defendants |